UNITED STATES, Appellee

v.

Timothy E. MILLER, Interior Communications Electrician
Third Class
U.S. Navy, Appellant

No. 04-0799

Crim. App. No. 200400762

United States Court of Appeals for the Armed Forces

Argued January 11, 2006

Decided August 29, 2006

GIERKE, C.J., delivered the opinion of the Court, in which
EFFRON, BAKER, and ERDMANN, JJ., joined.  CRAWFORD, J., filed a
separate opinion concurring in the result.

Counsel

For Appellant:  James W. Volberding, Esq. (argued); Captain
Peter H. Griesch, USMC.

For Appellee:  Major Wilbur Lee, USMC (argued); Captain Glen R.
Hines, USMC, and Commander Charles N. Purnell II, JAGC, USN (on
brief).

Military Judge:  David A. Wagner

**This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

This Court has granted review of three issues.[1] The first issue addresses the duties of an appellate defense counsel to communicate with Appellant prior to submitting a case on the merits to the United States Navy-Marine Corps Court of Criminal Appeals. The second and third issues address the responsibility of trial defense counsel to inform a client of a collateral consequence of a court-martial conviction -- that his guilty plea to possession of child pornography requires him to register as a sex offender. These two issues focus on whether trial defense counsel's failure to inform Appellant of a sex offender registration requirement is either ineffective assistance of trial defense counsel or created in the record of trial a "'substantial basis'" in law and fact for questioning the guilty plea thereby rendering Appellant's plea improvident.[2]

We hold that there is no ineffective assistance of appellate counsel. Appellate defense counsel communicated by

---

[1]   I.   WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF
           APPELLATE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT
           TO THE U.S. CONSTITUTION AND R.C.M. 1202.
     II.   WHETHER APPELLANT'S PLEA WAS INVOLUNTARY AND
           THEREFORE FAILED TO MEET THE REQUIREMENTS OF R.C.M.
           910(d).
    III.   WHETHER APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF
           DEFENSE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO
           THE U.S. CONSTITUTION.

United States v. Miller, 61 M.J. 466 (C.A.A.F. 2005).
[2] United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991).

letter to Appellant soliciting Appellant's input as to the issues Appellant would like to present to the lower court. Appellant never responded to this letter. Appellate defense counsel completed an examination of the record and submitted the case to the Court of Criminal Appeals on its merits. We also hold that trial defense counsel's failure to inform Appellant of the requirement to register as a sex offender did not rise to the level of ineffective assistance of counsel nor did it result in a substantial basis to render Appellant's plea improvident.

## FACTUAL BACKGROUND

On December 22, 2003, Appellant pled guilty at a general court-martial to misusing a government computer, receiving child pornography, and possession of visual depictions of minors engaged in sexually explicit conduct.[3] Appellant admitted to violating a general regulation by using a government-owned computer with Internet access to view, download, and store pornographic images. The computer was located aboard the USS HARRY S. TRUMAN (CVN 75) and was accessed by everybody on the ship. Appellant set up password protected files in which he stored over 100 downloaded pornographic images.

As to Appellant's offenses of knowingly receiving child pornography on divers occasions and possessing child

---

[3] Appellant's offenses were a violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934 (2000), respectively.

3

pornography, Appellant stated that he knew the pornography involved an actual minor or minors engaged in sexually explicit conduct. He also stated that he viewed or downloaded the images onto the government-owned computer onboard the ship while either in port at Norfolk, Virginia, or while at sea. During the plea colloquy, he testified that the images did not depict children engaging in sexual intercourse, but rather, they were pictures of a suggestive nature that portrayed the genitalia of the children.

Appellant's guilty plea colloquy and the providence inquiry by the military judge were straightforward and uneventful. The military judge accepted Appellant's guilty pleas, convicted him of the charged offenses, and sentenced Appellant to confinement for one year, reduction to pay grade E-1 and a bad-conduct discharge. Approximately four months later, the convening authority approved the sentence as adjudged but pursuant to a pretrial agreement suspended all confinement beyond time served in excess of 210 days for a period of twelve months from the date of trial.

Before the lower court, Appellant was represented by detailed military appellate defense counsel. Appellate defense counsel communicated by letter to Appellant soliciting Appellant's input as to issues Appellant would like to present to the lower court. Appellant received this letter but never

responded.  Appellate defense counsel completed an examination of the record and submitted the case to the Court of Criminal Appeals on its merits.  The lower court affirmed both findings and sentence in a short opinion.[4]

After the decision by the lower court, Appellant submitted an affidavit to this Court asserting that his trial defense counsel was deficient in failing to advise him of the consequences of his guilty plea and that this deficiency rendered his guilty plea improvident.  Appellant asserts that upon his final release from confinement, a brig transition counselor informed him for the first time that he would be required, under Texas law, to register as a classified sex offender for the remainder of his life.[5]  Appellant asserts that he would not have pled guilty to child pornography if he had

_____

[4] United States v. Miller, No. NMCCA 200400762 (N-M. Ct. Crim. App. July 29, 2004).

[5] It appears that this information was presented to Appellant pursuant to Dep't of Defense, Instr. 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority para. 6.18.5.1 (July 17, 2001, Incorporating Change, June 10, 2003) [hereinafter DoD Instr. 1325.7], which states:

> Before final release from confinement, DoD correctional facility commanders will advise prisoners convicted of an offense requiring registration as a sex offender (see enclosure 27 for list of covered offenses) of the registration requirements of the State in which the prisoner will reside upon release from confinement.  The notice provided to a prisoner shall contain information that the prisoner is subject to a registration requirement as a sex offender in any State in which the person resides, is employed, carries on a vocation, or is a student.

known that the mandatory sex offender requirement applied to him.

Also in his affidavit, Appellant asserts that his appellate defense counsel was deficient in failing to communicate properly with him.  Although Appellant acknowledged receipt of the letter from appellate defense counsel soliciting his input regarding issues he would like to present to the lower court, Appellant never responded.  Appellant explained that "I felt assured that I had an effective advocate who would represent me on appeal . . . ."  In his affidavit, Appellant complains that he never spoke to his appellate defense counsel.  He also claims that, in light of the mandatory registration requirement for sexual offenders, he would have sought review on the issue of whether his computer pictures constituted child pornography.

Finally, in his affidavit Appellant explains his violation of the Texas sexual registration statute and its impact on him. Appellant states that upon his release from military service and his return to Texas, he was required by Texas law to register as a sexual offender.[6]  Appellant was convicted of violating the Texas sex offense registration statute and was sentenced to three years incarceration in the Texas prison system.  Appellant complains that no one in the military advised him of the time

---

[6] This registration requirement was pursuant to Tex. Code Crim. Proc. Ann. arts. 62.001-62.009 (Vernon 2005).

requirements for registration as a sexual offender or that

failure to comply with the Texas law was a felony.  Appellant

remains in custody.

DISCUSSION

A.  Issue I:  Appellant's claim of ineffective assistance of
appellate defense counsel

Appellant alleges three deficiencies by appellate defense

counsel amounting to ineffective assistance of counsel:  first,

that appellate defense counsel did not personally communicate

with him; second, that appellate defense counsel did not raise

any specific issue before the lower court, including whether

Appellant should have been informed of the requirement to

register as a sex offender prior to pleading guilty to the

charges; and third, that appellate defense counsel did not

address whether the photographs met the statutory definition of

child pornography.

The test for ineffective assistance of appellate defense

counsel is the same as the test for ineffective assistance of

trial defense counsel that the Supreme Court established in

Strickland v. Washington.[7]  The Supreme Court in Strickland

established a two-pronged test to determine whether there has

---

[7] 466 U.S. 668, 687 (1984); see also United States v. Adams, 59
M.J. 367, 370 (C.A.A.F. 2004); United States v. Polk, 32 M.J.
150, 153 (C.M.A. 1991).

7

been ineffective assistance of counsel within the meaning of the

Sixth Amendment:

> First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.[8]

In Polk, this Court applied Strickland using a three-

pronged test to determine whether counsel has been ineffective:

(1) "Are the allegations made by appellant true; and, if they

are, is there a reasonable explanation for counsel's actions in

the defense of the case?"; (2) If the allegations are true,

"did the level of advocacy 'fall[] measurably below the

performance . . . [ordinarily expected] of fallible lawyers?'";

and (3) "If ineffective assistance of counsel is found to exist,

'is . . . there . . . a reasonable probability that, absent the

errors, the factfinder would have had a reasonable doubt

respecting guilt?'"[9]

Appellate defense counsel must comply with the fundamental

duty to communicate effectively with the client.[10] However, in

---

[8] 466 U.S. at 687.

[9] 32 M.J. at 153 (citations omitted) (interpolations in original); see also United States v. Hullum, 15 M.J. 261, 267 (C.M.A. 1983).

[10] See American Bar Association Standards for Criminal Justice: Prosecution Function and Defense Function, Standards 4-2.1, 4-3.1, 4-3.8, 4-5.1, 4-5.2 (3d ed. 1993); see also United States

the military justice system, there is a special duty of the appellate defense counsel to afford an accused the opportunity to raise issues.[11] Appellate defense counsel must not only communicate with an appellant but must identify to an appellate court those issues the appellant wishes to present.[12]

In the present case, Appellant did not identify specific issues that he wished his appellant defense counsel to raise at the lower court. Appellate defense counsel notified Appellant in a letter dated July 16, 2004, that he had been assigned as Appellant's appellate defense counsel. In this letter, appellate defense counsel also explained that he would review the record of trial to determine if any prejudicial error occurred during the court-martial and that he intended to file a pleading with the lower court. The letter specifically explained that if Appellant desired to address any issues to the lower court, he should contact appellate defense counsel. At this time, Appellant had been released from confinement and had been notified by the brig counselor that he would have to register as a sex offender in Texas. If Appellant desired to raise this matter with either his appellate defense counsel or the lower court, Appellant had the opportunity to do so.

---

v. Hood, 47 M.J. 95, 97 (C.A.A.F. 1997); United States v. MacCulloch, 40 M.J. 236, 239 (C.M.A. 1994).
[11] United States v. Grostefon, 12 M.J. 431, 435-36 (C.M.A. 1982).
[12] Id. at 435.

Although the letter from appellate defense counsel indicated that Appellant had twenty days to respond, four days later, appellate defense counsel submitted the case to the lower court without specific assignment of error and without admitting that the findings and sentence were correct in law and fact. Appellant defense counsel should have waited longer to afford Appellant an opportunity to respond. However, appellate defense counsel's action did not result in prejudice, because Appellant never responded and therefore failed to identify any issues he would have raised had counsel waited for his input.

We conclude that Appellant's assertions in Issue I are without merit.

B. Issue II: Whether Appellant's plea was involuntary and therefore failed to meet the requirements of R.C.M. 910(d)

Appellant's arguments regarding Issues II and III are rooted in the fact that Appellant did not know that he would be required to register as a sex offender in the state of Texas as a result of his conviction. It is unrebutted that neither Appellant's trial defense counsel, nor the military judge who accepted his plea, informed him that any state in general, nor Texas in particular, required that persons convicted of possessing child pornography in military courts register as sex offenders.

The rejection requires that the "record of trial show a 'substantial basis' in law and fact for questioning the guilty plea."[13]  The record reflects that the military judge established a sufficient legal and factual basis for Appellant's pleas. During the plea inquiry, the military judge gave a constitutionally sound definition of child pornography.[14]  In support of his guilty pleas, Appellant admitted that, based on his knowledge of what a child less than eighteen years of age looks like, the images in question were photographs of "real children" rather than adults or "some artist's rendition of children."  Appellant also admitted that the images of the child pornography at issue were transported through interstate commerce when he downloaded them from the Internet -- some from foreign websites.[15]

A collateral consequence is "[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence."[16]  In the present case, the requirement that Appellant register as a sexual offender is a consequence of his conviction that is separate and distinct from the court-martial process.

---

[13] Prater, 32 M.J. at 436.
[14] See Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. § 2256(8) (2000).
[15] See United States v. Mason, 60 M.J. 15, 18 (C.A.A.F. 2004).
[16] Black's Law Dictionary 278 (8th ed. 1999).

This Court has previously explained the difficult task of challenging a guilty plea in light of unforeseen consequences of a court-martial conviction:

> [W]hen collateral consequences of a court-martial conviction -- such as administrative discharge, loss of a license or a security clearance, removal from a military program, failure to obtain promotion, deportation, or public derision and humiliation -- are relied upon as the basis for contesting the providence of a guilty plea, the appellant is entitled to succeed only when the collateral consequences are major and the appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding. In short, chief reliance must be placed on defense counsel to inform an accused about the collateral consequences of a court-martial conviction and to ascertain his willingness to accept those consequences.[17]

In both Bedania and Williams the misinformation about a collateral consequence resulted from a question of whether that misunderstanding undermined a pretrial agreement. Since this is a guilty plea case, the underlying analysis of the Bedania case is helpful here.

In this case, Appellant's misunderstanding was not the result of the language of the pretrial agreement, was not induced by the military judge's comments, nor was it made readily apparent to the military judge. Because Appellant's lack of knowledge is not the result of any of the above, the

---

[17] United States v. Bedania, 12 M.J. 373, 376 (C.M.A. 1982); United States v. Williams, 53 M.J. 293, 296 (C.A.A.F. 2000).

military judge did not err in his responsibility to ensure that Appellant understood all the consequences of his guilty plea. Therefore, as there is no substantial basis to question his guilty plea, Appellant's plea was provident and will not be set aside.

Issue III is related to Issue II but focuses on the role of trial defense counsel in addressing the collateral consequence issue rather than the role of the military judge. We next turn to this companion issue.

### C. Issue III: Whether Appellant received ineffective assistance of trial defense counsel

There is no need to look further than the first prong of the Polk analysis above to determine that Appellant did not receive ineffective assistance of trial defense counsel. Although the requirement of registering as a sex offender is a serious consequence of a conviction, trial defense counsel's failure to advise Appellant of this consequence does not rise to the level of ineffective assistance of counsel.

The registration requirement that Texas imposes on persons convicted of certain crimes is a consequence that is separate and distinct from the court-martial process. This consequence is a result of, but not part of, the court-martial process. This Court has stated that "'chief reliance must be placed on defense counsel to inform an accused about the collateral

13

consequences of a court-martial and to ascertain his willingness to accept those consequences.'"[18]  But the failure of defense counsel in this matter has not in the past been found to be ineffective assistance of counsel.

Finally, we conclude that nothing in the representation of Appellant rendered his plea involuntary.  The Supreme Court has stated that when "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[19]

We observe that several federal courts of appeals have concluded that trial defense counsel's failure to address several other collateral consequences with a defendant was within the range of professional competence.  We view these cases to be persuasive.  The United States Court of Appeals for the Tenth Circuit addressed this "range of competence" and has held that "deportation is a collateral consequence of the criminal proceeding and therefore the failure to advise does not amount to ineffective assistance of counsel."[20]  Similarly, the United States Court of Appeals for the Seventh Circuit has held

---

[18] Williams, 53 M.J. at 296 (quoting Bedania, 12 M.J at 376).
[19] Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).
[20] Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992).

that "while the Sixth Amendment assures an accused of effective assistance of counsel in 'criminal prosecution,' this assurance does not extend to collateral aspects of the prosecution."[21] Explaining its holding, the court stated that "actual knowledge of consequences which are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea."[22] Finally, the United States Court of Appeals for the Eleventh Circuit has held that where "potential consequences are clearly collateral, neither the court nor [the defendant's counsel] were constitutionally required to make [the defendant] aware of them."[23]

We assume as correct Appellant's allegation that he was not informed of the requirement to register as a sex offender as a result of pleading guilty.[24] In light of the well-established precedent of this Court and other courts of appeals, we hold that this failure of trial defense counsel to inform Appellant of this collateral consequence does not rise to the level of ineffective assistance of counsel. However, information of this

---

[21] United States v. George, 869 F.2d 333, 337 (7th Cir. 1989).
[22] Id.; see also Wright v. United States, 624 F.2d 557, 561 (5th Cir. 1980) ("[A] plea's possible enhancing effect on a subsequent sentence is merely a collateral consequence of the conviction; it is not the type of consequence about which a defendant must be advised before the defendant enters the plea.").
[23] McCarthy v. United States, 320 F.3d 1230, 1234 (11th Cir. 2003).
[24] See United States v. Ginn, 47 M.J. 236, 242-43 (C.A.A.F. 1997).

type may have been helpful to Appellant in understanding the consequences of his guilty plea, in accepting those consequences, and in pleading guilty.

The sex offender registration requirement was initially enacted as a federal statute in 1994.[25] While addressing civilian criminal offenses, the statute also specifically states that a court-martial sentence for a criminal offense against a victim who is a minor or a sexually violent offense triggers mandatory reporting and registration.[26] Every state has also passed mandatory sexual offender registration. In accordance with the federal statute and in light of state statutes addressing this subject, DoD Instr. 1325.7 identifies those offenses that trigger mandatory sex offender registration.[27]

Given the plethora of sexual offender registration laws enacted in each state, it is not necessary for trial defense

---

[25] In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act [hereinafter the Wetterling Act] (codified as amended at 42 U.S.C. § 14071 (2000)), which conditioned availability of federal crime prevention funds upon a state's creation of a sex offender registration and community notification program. The Wetterling Act was amended on May 17, 1996, by "Megan's Law," which removed the original requirement that the registry information be private and added a mandatory community notification provision to the existing requirements. Megan's Law, Pub. L. No. 104-145, 110 Stat. 1345 (1996) (codified at 42 U.S.C. § 14071(d)). There is now a version of "Megan's Law" in every state.
[26] 42 U.S.C. § 14071(a)(3)(A), (b)(7).
[27] DoD Instr. 1325.7 Enclosure 27: Listing Offenses Requiring Sex Offender Processing.

counsel to become knowledgeable about the sex offender

registration statutes of every state.  However, we do expect

trial defense counsel to be aware of the federal statute

addressing mandatory reporting and registration for those who

are convicted of offenses within the scope of this statute.[28]

Also, we expect counsel to be aware of DoD Instr. 1325.7, which

identifies offenses that trigger mandatory sex offender

reporting.  The operation of this statute and instruction may

have an impact on an accused's decisions both before and at

trial, and on an accused's legal obligations after conviction.

In light of the federal statute, DoD Instr. 1325.7, and

state statutes requiring sex offender registration, we conclude

that a prospective rule is appropriate to address the importance

of trial defense counsel explaining the sex offender

registration requirement to an accused.  For all cases tried

later than ninety days after the date of this opinion, trial

defense counsel should inform an accused prior to trial as to

any charged offense listed on the DoD Instr. 1325.7 Enclosure

27:  Listing Of Offenses Requiring Sex Offender Processing.[29]

Trial defense counsel should also state on the record of the

court-martial that counsel has complied with this advice

requirement.  While failure to so advise an accused is not per

---

[28] See 42 U.S.C. § 14071(a)(3)(A), (b)(7).
[29] Id.

17

se ineffective assistance of counsel, it will be one circumstance this Court will carefully consider in evaluating allegations of ineffective assistance of counsel.

In our view, the importance of this rule springs from the unique circumstances of the military justice system.  More often than not, an accused will be undergoing court-martial away from his or her state of domicile.  Also, the court-martial and plea may occur without the assistance of counsel from the accused's domicile state.  Finally, every state now has its own version of Megan's Law.  These circumstances can contribute to an accused being uninitiated to the collateral consequence of mandatory registration requirement as a result of his court-martial conviction.

This rule will serve two distinct functions.  First, it will promote a professional dialogue between an accused and trial defense counsel because it obligates trial defense counsel to address a legal issue about which an accused may be uninformed.  Additionally, it will foster an accused's proper consideration of this unique collateral circumstance that may affect the plea decisions as to any offense that would trigger a sex offender registration requirement.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals as to both findings and sentence is affirmed.

CRAWFORD, Judge (concurring in the result):

I respectfully disagree with the majority's continuing pattern of engaging in judicial rulemaking by usurping the authority of the President as delegated to him by Congress pursuant to Article 36(a), Uniform Code of Military Justice Article (UCMJ), 10 U.S.C. § 836(a) (2000).[1] This Court does not have the authority to create a rule requiring trial defense counsel to advise an accused regarding a particular consequence of a conviction in order to find a guilty plea provident. "[T]he power of judging . . . [must be] separated from the legislative and executive powers." United States v. Moreno, 63 M.J. 129, 144 (C.A.A.F. 2006) (Crawford, J., concurring in part and dissenting in part) (citing The Federalist, No. 47, at 302 (James Madison) (Clinton Rossiter ed., 1961)).

In this case, the majority creates a prospective rule "to address the importance of trial defense counsel explaining the sex offender registration requirement to an accused. . . . prior to trial as to any charged offense listed on the DoD Instr. 1325.7 Enclosure 27: Listing Of Offenses Requiring Sex Offender Processing."[2] In addition, the majority requires that, in the

---

[1] I agree with the majority's conclusion that Appellant did not receive ineffective assistance of counsel.

[2] Dep't of Defense, Instr. 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority Enclosure 27: Listing of Offenses Requiring Sex Offender Processing (July 17, 2001, Incorporating Change 1, July 10,

future, trial defense counsel "state on the record of the court-martial" that he has advised the accused of this requirement.[3] This Court stated that while failure to advise an accused of the registration requirement will not per se amount to ineffective assistance of counsel, the failure to do so will be "carefully consider[ed] in evaluating allegations of ineffective assistance of counsel."

Rulemaking authority belongs to the legislature through statute or the President through the implementation of changes in the Manual for Courts-Martial, United States (2005 ed.) (MCM). Pursuant to Article 36(a), UCMJ, the President of the United States is given express authority to promulgate "[p]retrial, trial, and post-trial procedures, including modes of proof, for cases . . . triable in courts-martial . . . so far as [the President] considers practicable, apply[ing] the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts . . . ." The President does this through executive order

---

2003) [hereinafter DoD Instr. 1325.7]; see also Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071 (2000).

[3] It is not clear when this statement is supposed to be made or whether it is to become part of the guilty plea inquiry by the military judge. The majority opinion also does not address the requirements for trial defense counsel to advise an accused of the consequences of a conviction for one of the enumerated offenses in the event there is a contested case. The trigger is conviction of a listed offense and not whether the accused pleads guilty or is found guilty contrary to his pleas.

by creating and modifying the Rules of Courts-Martial (R.C.M.) and the Military Rules of Evidence in the MCM.  R.C.M. 910 sets out what is required before an accused's plea is acceptable.

Like Fed. R. Crim. P. 11(b)(1),[4] R.C.M. 910(c) sets forth the military judge's responsibility regarding the advice given to an accused to ensure a knowing and voluntary plea.  Just as these rules do not require that the military judge specifically notify an accused of all the rights he or she is waiving by a plea, they also do not require that the military judge inform an accused of all the possible collateral consequences of pleading guilty.  The military judge must ensure that the plea is voluntary and not the result of coercion or unlawful promises. There is no requirement to inform an accused of potential deportation;[5] revocation of a pilot's license;[6] potential immigration consequences;[7] possibility of consecutive sentences;[8] loss of the right to vote, loss of eligibility to work as a civil servant, travel freely abroad, or possess firearms, a

---

[4] R.C.M. 910 generally follows Fed. R. Crim. P. 11.  MCM, Analysis of the Rules for Courts-Martial app. 21 at A21-58 to A21-59.

[5] United States v. Romero-Vilca, 850 F.2d 177, 179 (3d Cir. 1988); United States v. Yearwood, 863 F.2d 6, 7-8 (4th Cir. 1988).

[6] Kratt v. Garvey, 342 F.3d 475, 485 (6th Cir. 2003).

[7] Broomes v. Ashcroft, 358 F.3d 1251, 1256-57 (10th Cir. 2004).

[8] United States v. Hurlich, 293 F.3d 1223, 1231 (10th Cir. 2002).

driver's license, or a professional license;[9] or other

consequences that may be imposed by the various branches of the

federal or state government.[10]

The American Bar Association (ABA) suggests that defense

counsel "should determine and advise the defendant . . . as to

the possible collateral consequences that might ensue from entry

of the contemplated plea." ABA Standards for Criminal Justice:

Pleas of Guilty, Standard 14-3.2(f) (3d ed. 1993). This

requirement, however, is not mandatory.[11] The failure to do so

may constitute ineffectiveness of counsel. Rather than

overstepping the separation of powers boundaries by creating a

prospective rule, which is not within our authority, this Court

should recommend that the President consider requiring that

---

[9] See People v. Ford, 657 N.E.2d 265, 267-68 (N.Y. 1995), and cases cited therein.

[10] Numerous cases have held that a defense attorney's mere failure to advise a defendant of the possibility of a collateral consequence does not constitute ineffective assistance of counsel. See Yearwood, 863 F.2d at 7-8. However, if an attorney affirmatively misstates a collateral consequence of a guilty plea, the courts are more open to considering whether the misstatement constituted ineffective assistance of counsel. See United States v. Kwan, 407 F.3d 1005, 1015-16 (9th Cir. 2005); United States v. Couto, 311 F.3d 179, 187-88, 191 (2d Cir. 2002).

[11] "Failure of the court or counsel to inform the defendant of applicable collateral sanctions shall not be a basis for withdrawing the plea of guilty, except where otherwise provided by law or rules of procedure, or where the failure renders the plea constitutionally invalid." ABA Standards for Criminal Justice: Collateral Sanctions and Discretionary Disqualification of Convicted Persons, Standard 19-2.3(b) (3d ed. 2004).

defense counsel give such notice to accuseds to avoid any claim in the future of ineffectiveness.  The advice from defense counsel would reinforce DoD Instr. 1325.7 that "correctional facility commanders will advise prisoners convicted of an offense requiring registration as a sex offender (see enclosure 27 for list of covered offenses) of the registration requirements of the State in which the prisoner will reside upon release from confinement."  Id. at para. 6.18.5.1.

If there needs to be a change to the requirements of R.C.M. 910, it is up to the President to make that change and not this Court.  Some states, through their elected officials, have mandated such requirements.  See, e.g., Ducally v. State, 809 A.2d 472, 474 (R.I. 2002) (noting state statute requiring judges to inform aliens of impact on immigration status); State v. Douangmala, 2002 WI 62, ¶4, 253 Wis. 2d 173, 176-77, 646 N.W.2d 1, 2-3 (citing statute requiring warning of deportation).  Cf. Mitschke v. State, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004) (although state requires registration of sex offenders, failure to apprise a defendant of such a requirement does not require finding a plea involuntary).

The collateral consequence notification requirement imposed by the majority is also inconsistent with Bradshaw v. Stumpf.[12] At issue in Bradshaw was whether a plea was voluntary.  As the

---

[12] 125 S. Ct. 2398 (2005).

Supreme Court stated, the "prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel."[13]  But "[w]here a defendant pleads guilty to a crime without having been informed of the crime's elements," the plea is <u>not voluntary, knowing, and intelligent</u>.[14]  The voluntariness of a plea does not depend on notification of the collateral consequences of the plea.

The majority's opinion is a step down the slippery slope of judicial rulemaking and lays the foundation for creating a future laundry list of potential collateral consequences that military judges and defense counsel will have to discuss with an accused before his or her plea is accepted as provident and voluntary.  This approach not only oversteps our judicial role, but also places this Court outside the judicial mainstream.  Although I agree with the result to affirm the findings and sentence, I respectfully disagree with this Court's creation of a rule requiring defense counsel to provide notice to their clients of a sexual offender registration requirement and to state on the record at trial that such notice has been provided.

---

[13] <u>Id.</u> at 2405.
[14] <u>Id.</u>