# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ANIBAL A. BARRAZA**
**LANCE CORPORAL (E-3), U.S. MARINE CORPS**

**NMCCA 201400210**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 20 February 2014.
**Military Judge:** LtCol E.H. Robinson, Jr., USMC.
**Convening Authority:** Commanding General, 3d Marine
Logistics Group, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** LtCol P.D. Sanchez,
USMC.
**For Appellant:** CDR Boyce A. Crocker, JAGC, USN.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN; Capt Cory
A. Carver, USMC.

**26 February 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS
PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge sitting as a general court-martial
convicted the appellant, pursuant to his pleas, of attempted
sexual assault of a child, attempted production of child
pornography, attempted sexual abuse of a child, and one
specification each of receipt, possession, and distribution of
child pornography in violation of Articles 80 and 134, Uniform

Code of Military Justice, 10 U.S.C. §§ 880 and 934. The military judge sentenced the appellant to confinement for a period of eight years, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged but, pursuant to a pretrial agreement, suspended all confinement in excess of five years.[1]

The appellant raises five assignments of error:

(1) the convictions for attempted sexual assault of a child and attempted sexual abuse of a child constitute an unreasonable multiplication of charges;

(2) a dishonorable discharge is inappropriately severe;

(3) the military judged erred by accepting pleas of guilty to the three specifications under Article 134, UCMJ, because they were facially defective;

(4) no inquiry was made into whether the appellant required the services of an interpreter; and,

(5) the military judge failed to inquire into whether the appellant was a dual citizen of Colombia and the United States and what rights and repercussions that might entail.[2]

After carefully considering the record of trial and the submissions of the parties, we find that no error materially prejudicial to substantial rights of the appellant occurred. We therefore affirm the findings and the approved sentence. Arts. 59(a) and 66(c), UCMJ.

**Background**

On 3 July 2013, the Naval Criminal Investigative Service (NCIS) received an anonymous tip that someone with the screen name "Anibal Barraza" was attempting to use the internet to initiate sexual contact with minor females. Acting on this tip,

---

[1] To the extent the CA's Action purports to execute the dishonorable discharge, it is a legal nullity. *United States v. Bailey*, 68 M.J. 409 (C.A.A.F. 2009).

[2] Assignments of Error (2), (4), and (5) were raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

"Amber," an NCIS undercover agent posing as a 15-year-old girl, submitted a "friend request" to the appellant's Facebook account. During the ensuing online interaction between the two, the appellant confirmed his knowledge that "Amber" was 15 years old, made a series of sexually explicit comments to her, and arranged to meet her aboard Kadena Air Force Base, Okinawa, Japan to engage in sexual activity with her. He took with him a high definition digital camera, which he intended to use to photograph himself and the 15-year-old engaged in sexual acts.

To his surprise, the appellant was greeted at the pre-determined location not by a 15-year-old girl, but by NCIS agents waiting to apprehend him. A subsequent search of the appellant's computer revealed, in a file labeled "pequeñas" (translated as "little girls" by the appellant), approximately 400 images and videos of children under 18 years of age engaged in sexually explicit activity.

**Analysis**

1. *Unreasonable Multiplication of Charges*

The appellant asserts now for the first time on appeal that Specification 1 of Charge I, attempted sexual assault of a child, and the specification of the Additional Charge, attempted sexual abuse of a child, constitute an unreasonable multiplication of charges for findings purposes. We disagree.

The prohibition against unreasonable multiplication of charges is codified in RULE FOR COURTS-MARTIAL 307(c)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.): "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." This provides trial and appellate courts a mechanism to address prosecutorial overreaching by imposing a standard of reasonableness. *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001). To determine whether the Government has unreasonably multiplied charges, we apply a five-part test:

    (1) Did the appellant object at trial?;

    (2) Is each charge and specification aimed at distinctly separate criminal acts?;

    (3) Do the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

3

(4) Do the number of charges and specifications unreasonably increase the appellant's punitive exposure?; and,

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Id.* at 338.

In this case, all five of the *Quiroz* factors weigh in the Government's favor, demonstrating it acted reasonably in charging the offenses separately. The appellant did not raise the issue at trial. Further, the specification of the Additional Charge was aimed at the appellant's attempted lewd act upon a child by repeatedly communicating indecent, sexually explicit language to a person he thought to be a 15-year-old girl, while Specification 1 of Charge I was aimed at his attempt to meet with and engage in a sexual act with a child. The appellant argues the indecent language nonetheless was merely "part and parcel"[3] of his attempt to engage in sexual acts with "Amber." But the communications in this case went well-beyond that necessary to arrange a meeting or even to communicate he was interested in sex, both in terms of the time span over which the communications continued and the explicit, repeated nature of his lewd suggestions. Separate convictions for his lewd language to a would-be 15-year-old and for his attempt to engage in sexual acts with her neither exaggerated his criminality nor unreasonably increased his punitive exposure. Finally, we find no evidence of prosecutorial overreaching under these circumstances.

## 2. Sentence Appropriateness

Under Article 66(c), UCMJ, this court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." We independently determine the appropriateness of the sentence in each case we affirm. *See United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005). Assessing sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the

---

[3] Appellant's Brief of 8 Sep 2014 at 7.

4

character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

The appellant progressed from viewing, saving, and distributing child pornography to making actual contact with a person he believed was a child, committing lewd acts upon that person, and intending to sexually assault her and to produce child pornography by capturing the event. The approved dishonorable discharge is not inappropriately severe.

### 3. *Sufficiency of Article 134 Specifications*

Specifications 1 through 3 of Charge III alleged the appellant:

> did, at or near Okinawa, Japan, between, on or about 26 August 2011 and on or about 31 July 2013, knowingly and wrongfully [possess, distribute, and receive, respectively] child pornography, to wit: digital images or videos of a minor, or what appears to be a minor, engaging in sexually explicit conduct, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed services.

The military judge, prior to providing elements and definitions for these specifications, *sua sponte* raised the issue that within the charged time, effective 12 January 2012, the MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) was amended, specifically enumerating child pornography under Article 134.[4] He indicated he therefore intended to bifurcate his providence inquiry into each of these specifications, addressing child pornography offenses on or after 12 January 2012 under clauses 1 and 2 of Article 134 and those before that date "basically under the old rules regarding child pornography that is assimilated under 18 [U.S. Code § 2252A.]"[5]

The military judge asked both trial and defense counsel whether there were any questions; neither had any. He then asked if trial or defense counsel had any objections to this

---

[4] MCM, App. 23, ¶ 68b.

[5] Record at 72.

procedure; again, each indicated they had none.  The appellant now, however, asserts it was plain error not to dismiss the specifications because they were "facially defective"[6] by failing to provide notice of "the different laws that would have governed the timeframes for the charged offenses."[7]  Before 12 January 2012, the appellant asserts, "such offenses were charged as an assimilative crime under 18 U.S.C. § 2251."[8]

Whether a specification is defective is a question of law that we review *de novo*.  *United States v. Ballan*, 71 M.J. 28 (C.A.A.F. 2012).  When an appellant raises the validity of specifications for the first time on appeal, we interpret them "with maximum liberality."  *United States v. Bryant*, 30 M.J. 72, 73 (C.M.A. 1990) (citing *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A. 1986)) (additional citation and footnote omitted) .

The military is a notice pleading jurisdiction. *United States v. Sell*, 11 C.M.R. 202, 206 (C.M.A. 1953). Specifications are sufficient "if they, 'first, contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend, and, second, enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"  *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  Under RULE FOR COURTS-MARTIAL 307(c)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), "[a] specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication."

The specifications here alleged all the elements of a clause 1 and 2 violation of Article 134: (1) that the accused did a certain act; and (2) that, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.  MCM, Part IV, ¶ 60b.  Further, as the Court of Appeals for the Armed Forces has held, child pornography offenses occurring prior to 12 January 2012 still could appropriately be charged under clauses 1 and 2 of Article 134.  *United States v. Finch*, 73 M.J. 144 (C.A.A.F. 2014); *United States v. Beaty*, 70 M.J. 39 (C.A.A.F. 2011).  The specifications were, accordingly, sufficient.

---

[6] Appellant's Brief at 11.

[7] *Id.* at 14 (footnote omitted).

[8] *Id.* at 12 (footnote omitted).

Nonetheless, it was the military judge who spoke in terms of assimilating § 2252A for conduct prior to 12 January 2012. This is problematic because: (1) the appellant was not charged with (or convicted of) a crime assimilated into the UCMJ by clause 3, Article 134; (2) the conduct occurred in Okinawa, Japan, raising an extraterritorial applicability issue not addressed by the trial court (*see United States v. Martinelli*, 62 M.J. 52 (C.A.A.F. 2005)); and (3) in his bifurcated providence inquiry, the military judge failed to elicit from the appellant how his conduct prior to 12 January 2012 was prejudicial to good order and discipline or service discrediting. While we find this to be error, it had no impact on the providence of the appellant's pleas, because once he admitted all the elements of clause 1 and 2 violations of Article 134 for conduct occurring on or after 12 January 2012, his pleas to those specification were fully provident. Admitting to any conduct before that was mere surplusage as far as providence is concerned[9] and there is no indication of any prejudice to the appellant.[10]

---

[9] *See United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004) ("[A]n error in advising an accused does not always render a guilty plea improvident. Where the record contains factual circumstances that objectively support the guilty plea to a more narrowly construed statute or legal principle, the guilty plea may be accepted.") (citations and internal quotation marks omitted).

[10] Although not raised, we also note that this case presents an issue regarding the correct maximum punishment for these specifications. Prior to the President listing Child Pornography as an enumerated Article 134 offense, the maximum punishment for allegations involving "what appears to be a minor" was limited to four months of confinement. *Beaty*, 70 M.J. at 45. Subsequent to the effective date of the President's action, such offenses were punishable by 10 years of confinement for possession and receipt and 20 years for distribution. MCM, Part IV, ¶ 68b(e). In this case, the specifications were drafted such that the appellant would have been provident by admitting to acts occurring either before or after that date. However, we need not address the implications of that charging decision here. Assuming without deciding that the maximum punishment for those offenses included only four months' confinement each, we still find the appellant's pleas provident, and that any error regarding the maximum punishment was an insubstantial factor in the appellant's decision to plead guilty. *United States v. Hunt*, 10 M.J. 222, 223-224 (C.M.A. 1981). The gravamen of the appellant's offenses were his attempts to sexually assault a child and to produce child pornography by recording the assault and a revised maximum punishment still would have included over 70 years' confinement; thus, the appellant's pretrial agreement suspending all confinement in excess of five years was a compelling bargain. Furthermore, in light of the gravamen of the offenses, we also find that the error would not have impacted the sentence awarded by the military judge.

7

*4. Interpreter*

There is no merit to the appellant's assertion that NCIS and the military judge were required to inquire into whether he needed an interpreter. R.C.M. 502(e)(3)(A) provides, "Interpreters shall interpret . . . for an accused who does not speak or understand English." The appellant did not request an interpreter or indicate any difficulty speaking or understanding English either during his interrogation or at any point during his trial. Further, neither the record nor the pleadings indicate that the appellant lacked the ability to speak or understand English.

*5. Inquiry into Citizenship*

The appellant, asked by the military judge if he was a U.S. citizen, responded affirmatively. The appellant now claims he "*may*"[11] retain dual citizenship with Colombia and that therefore his "obligations or rights . . . *may* be affected"[12] by his guilty plea. We will not engage in such speculation; the military judge's inquiry was sufficient. *United States v. Miller*, 63 M.J. 452 (C.A.A.F. 2006).

*6. Court-Martial Order*

Finally, although not raised, we note that the court-martial order (CMO), in what we deem a scrivener's error, misstates the period of suspension delineated in the pretrial agreement.[13] Accordingly, we will direct corrective action in compliance with the pretrial agreement in our decretal paragraph. *United States v. Crumpley*, 49 M.J. 538, 539 (N.M.Ct.Crim.App. 1998).

**Conclusion**

The findings and the sentence are affirmed. The supplemental CMO will properly reflect that the period of suspension of all confinement in excess of five years shall

---

[11] Appellant's Brief at 16 (emphasis added).

[12] *Id.* at 16-17 (emphasis added).

[13] The CMO states the period of suspension "shall begin from the period of time served plus 6 months thereafter, at that time, unless sooner vacated, the suspended part of the confinement will be automatically remitted." CMO of 20 May 14. This is effectively a nullity as it does not provide a beginning and end date of suspension.

begin from the date of the original CMO, 20 May 2014, and continue for the period of confinement served plus six months thereafter.

For the Court

R.H. TROIDL
Clerk of Court