# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40332**

————————————

**UNITED STATES**
*Appellee*

**v.**

**S'hun R. MAYMI**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 5 October 2023

————————————

*Military Judge*: Lance R. Smith.

*Sentence*: Sentence adjudged 21 April 2022 by GCM convened at Royal Air Force Lakenheath, United Kingdom. Sentence entered by military judge on 9 May 2022: Dishonorable discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Major Spencer R. Nelson, USAF; Major Eshawn R. Rawlley, USAF.

*For Appellee*: Lieutenant Colonel Matthew J. Neil, USAF; Captain Olivia B. Hoff, USAF; Captain Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, CADOTTE, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge CADOTTE joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MASON, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one charge with one specification of sexual assault and one charge with one specification of unlawful entry, in violation of Articles 120 and 129, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 929.[1,2] The military judge sentenced Appellant to a dishonorable discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority took no action on the findings; he deferred the reduction in grade until the date of his action and waived all automatic forfeitures for a period of six months for the benefit of Appellant's wife and child.

Appellant's counsel submitted this case for review on its merits. Appellant personally raises five issues: (1) whether the findings are legally and factually sufficient; (2) whether the Third Air Force Staff Judge Advocate committed unlawful command influence; (3) whether trial defense counsel are allowed to argue sex offender registration as a mitigating factor for consideration in sentencing; (4) whether the sentence adjudged by the court-martial was unduly severe; and (5) whether the "Firearm Prohibition Triggered Under 18 U.S.C. § 922" note on the staff judge advocate's indorsement to the entry of judgment is constitutional and whether this court can decide that question.[3] We have carefully considered issue (5). As recognized in *United States v. Lepore*, 81 M.J. 759, 763 (A.F. Ct. Crim. App. 2021) (en banc), this court lacks authority to direct modification of the 18 U.S.C. § 922 prohibition noted on the staff judge advocate's indorsement.

We find no error materially prejudicial to Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

In November 2020, AT was stationed at Royal Air Force (RAF) Mildenhall. AT had friends at RAF Mildenhall and at RAF Lakenheath. One of AT's friends from RAF Lakenheath was AR. On 26 November 2020, AR hosted a

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Military Rules of Evidence, and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was charged with burglary. He was acquitted of burglary but convicted of the lesser-included offense of unlawful entry.

[3] Appellant raises all these issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The language of the issues raised have been paraphrased and the issues reordered.

"Friendsgiving" dinner in her dorm room. Several Airmen attended the dinner, including Appellant.

AT arrived for the dinner later in the evening. Upon her arrival, she saw people sitting around, eating, drinking, listening to music, and socializing. After dinner, the group played different games, including drinking games. At some point, one of the attendees invited Appellant to join the group at the party. AT had never met Appellant before this evening.

Later in the evening, the dinner wound down and people began to leave. AR had told AT before the party that if AT was going to be drinking alcohol, she could stay in AR's dormitory room for the night so she did not have to drive back to RAF Mildenhall. AT did drink that night so she decided to stay in AR's room. AR left and went to another friend's room for the night. AR told AT that AT could tell everyone to leave..

After AR and others left, AT was left in AR's room with three male Airmen, including Appellant. They continued to play games, drink, and talk. Appellant made a couple of sexually charged comments and AT became uncomfortable. When the two other male Airmen decided to leave in the early hours of the morning, AT made sure that Appellant left as well.

AT laid down to go to sleep but was interrupted by Appellant knocking on the dorm room window. She went to the front door where Appellant stated that he left his cell phone in the room, so she let him in to look around. When Appellant asked if she had seen his phone, she stated she was unsure, she was tired, and she would let him know if she found it. Appellant then left the room. AT laid back down and soon fell asleep. The next thing AT remembered was waking up with someone touching her. Specifically, AT felt pain in her vagina and realized that someone's fingers were penetrating her in a back-and-forth motion. AT got out of the bed and moved to the other side of the room where she saw that the other person in the room was Appellant. AT very firmly yelled at Appellant to get out. Appellant responded, "my bad," he needed a place to sleep, and asked to sleep there. AT said "No" and Appellant eventually left. AT noticed that when she shut the door, the window next to the door was cracked open a little. She presumed the cracked window was how Appellant got into the room, so she closed it.

A few minutes later as she was in bed trying to fall back asleep, AT saw the door handle moving and heard something at the window. This happened a few times before she yelled out that she was going to call the police. Appellant can be seen on the surveillance camera outside the dormitory room and then running away from the room. AT sent a message to one of her friends telling them what had happened and was eventually able to fall asleep.

The next morning, AR and a few others returned to the room. They all cleaned up the room and AT talked to them about what Appellant did. Later, AT went back to RAF Mildenhall and eventually reported the incident to law enforcement.

In April 2021, AT had a meeting over "Zoom"[4] with the Third Air Force staff judge advocate (SJA).[5] AT discussed with the SJA the case moving forward. The SJA talked about the possible toll that these cases going forward can take on people and asked AT if that was okay. The SJA told AT that he would "have her back" regardless of whether AT decided to go forward with the trial or not. He further stated that they would make sure that nothing like this would happen again at their base. AT took some time to think after the meeting and later decided that she would participate in a court-martial.

During the presentencing proceedings, trial defense counsel presented argument where he stated, "You also have to consider that he will be – that he's been convicted of a sexual offense and a sex offender the rest of his life." Trial counsel objected asserting that this was improper argument. Trial defense counsel asserted that *United States v. Tyler*, 81 M.J. 108 (C.A.A.F. 2021), permitted the argument. The military judge heard the positions of the parties and sustained the objection. He ruled that he would not allow argument on the collateral consequence of sex offender registration but would consider the unsworn statement reference.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of his sexual assault conviction.

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt,

---

[4] "Zoom" is an online application commonly used for conducting remote meetings.

[5] It is clear from a review of the charge sheet, convening order, and post-trial documents that the Third Air Force staff judge advocate (SJA) was the convening authority's SJA.

however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted). The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1973)).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court is 'convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399). This court's review of the factual sufficiency of evidence for findings is limited to the evidence admitted at trial. *See United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted); *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

Appellant was convicted of sexual assault in violation of Article 120, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that Appellant committed a sexual act upon AT, to wit: penetrating her vulva with his finger, with an intent to gratify his sexual desire; and (2) that Appellant did so without AT's consent. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(2)(d).

Appellant was also convicted of unlawful entry in violation of Article 129, UCMJ, which required the Government to prove the following two elements beyond a reasonable doubt: (1) that Appellant entered the applicable dormitory room assigned to AR; and (2) that the entry was unlawful. *See MCM*, pt. IV, ¶ 79.b.(2)(a)–(b).

### 2. Analysis

#### a. Sexual Assault

Appellant asserts that his conviction for sexual assault is both legally and factually insufficient. He argues that AT was the only witness to the alleged misconduct and that her version of what happened "grew over time," thus casting doubt on the conviction.

A careful review of AT's testimony as well as all the evidence presented in the findings portion of the trial demonstrates that the military judge as the trier of fact rationally found the essential elements of this crime beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. AT's testimony is corroborated by numerous accounts of other witnesses present in AR's room that night. Further, the surveillance footage of the dorms showing the actions of the attendees of the "Friendsgiving dinner" just outside the room, including Appellant's, provides compelling corroborative evidence to AT's description of the evening. After weighing the evidence and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41.

#### b. Unlawful Entry

Appellant asserts that his conviction for unlawful entry is both legally and factually insufficient. Appellant again argues here that AT was the only witness to the alleged misconduct and that her version of what happened "grew over time," thus casting doubt on the conviction.

Here, these arguments can only undercut whether Appellant's entry into the dorm room was unlawful; there is no question that Appellant entered the room. Surveillance video shows Appellant standing outside of the dorm room for several minutes. He smoked something and paced along the walkway. He walked towards the surveillance camera staring up at it for several seconds and he tried to reach it but was unable to do so. He then walked back towards the dorm room door. Appellant is seen reaching his right arm inside the window beside the door. A few seconds later—he removed his arm, looked into the room through the window, slowly proceeded to open the door, and slowly stepped inside the room. This footage significantly corroborates AT's description of the evening's events and removes any doubt that Appellant's entry into the room at that time was unlawful. Viewing the evidence in the light most favorable to the Government, the military judge rationally found the essential elements of unlawful entry beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Reed*, 54 M.J. at 41.

**B. Unlawful Influence**

Appellant argues that the interaction between AT and the Third Air Force SJA was "unusual" and therefore "raises the specter of unlawful command influence."

**1. Law**

Article 37, UCMJ, states in relevant part:

> No person subject to this chapter [10 U.S.C. §§ 801 et seq.] may attempt to coerce or, by any unauthorized means, attempt to influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case, or the action of any convening, approving, or reviewing authority or preliminary hearing officer with respect to such acts taken pursuant to this chapter [10 U.S.C. §§ 801 et seq.] as prescribed by the President.

National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, § 532(a)(2), 133 Stat. 1198, 1359–60 (2019) (amending Article 37, UCMJ, 10 U.S.C. § 837).

We review allegations of unlawful command influence de novo. *United States v. Horne*, 82 M.J. 283, 286 (C.A.A.F. 2022). The Defense has the initial burden of raising the issue of unlawful command influence by presenting "some evidence" of unlawful command influence, meaning the Defense "must show facts which, if true, constitute unlawful command influence." *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999) (citation omitted). This "burden of showing potential unlawful command influence is low, but is more than mere allegation or speculation." *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citation omitted). If raised on appeal, an appellant must show: (1) facts which, if true, constitute unlawful command influence; (2) the proceedings were unfair; and (3) the unlawful command influence was the cause of that unfairness. *Id.*; *Biagase*, 50 M.J. at 150. If that burden is met, the burden then shifts to the Government to show beyond a reasonable doubt: (1) the predicate facts do not exist; or (2) the facts do not constitute unlawful command influence; or (3) the unlawful command influence did not affect the findings and sentence. *Biagase*, 50 M.J. at 151.

**2. Analysis**

Appellant fails to meet his initial burden of showing "some evidence" of unlawful influence. Appellant claims the discussion between the Third Air Force SJA and AT was "unusual," but does not articulate how that rises to unlawful influence.

Whether these conversations are unusual was not litigated at trial; Appellant did not file a motion or present additional evidence, and points only to AT's brief testimony on this issue. Recognizing that the initial burden is low, these facts still do not justify a conclusion that unlawful command influence occurred. Appellant has not demonstrated "some evidence" of unlawful command influence and is not entitled to relief.

## C. Sex Offender Registration as an Arguable Mitigating Factor

Appellant argues that trial defense counsel should have been able to argue that because Appellant would have to register as a sex offender, that is a mitigating factor for the sentencing authority's consideration.

### 1. Law

We review a military judge's ruling on an objection to sentencing argument for an abuse of discretion. *United States v. Briggs*, 69 M.J. 648, 650 (A.F. Ct. Crim. App. 2010).

Sentencing arguments by counsel must be based upon evidence adduced at trial and any fair inferences as may be drawn therefrom. *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993). "Further, sentencing arguments 'cannot include a matter not supported by the facts'" or reasonable inferences drawn therefrom. *Briggs*, 69 M.J. at 650 (quoting *United States v. Beneke*, 22 C.M.R. 919, 922 (A.F.B.R. 1956)).

"A collateral consequence is '[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.'" *United States v. Cueto*, 82 M.J. 323, 327 (C.A.A.F. 2022) (citing *United States v. Miller*, 63 M.J. 452, 457 (C.A.A.F. 2006) (quoting *Collateral Consequence*, BLACK'S LAW DICTIONARY (8th ed. 2004)). "The general rule concerning collateral consequences is that courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *United States v. Talkington*, 73 M.J. 212, 215 (C.A.A.F. 2014) (alteration in original) (citation omitted).

Sex offender registration is a collateral consequence of the conviction alone, not the sentence. *Cueto*, 82 M.J. at 327 (citing *Talkington,* 73 M.J. at 213).

### 2. Analysis

Trial defense counsel argued, "You also have to consider that he will be – that he's been convicted of a sexual offense and a sex offender the rest of his life." Trial counsel objected and the military judge sustained the objection after hearing the position of the parties. It is well settled that collateral consequences are not appropriate matter for argument in sentencing. Our superior

court made clear in *Talkington* that sex offender registration is a collateral consequence. *Id.* Hence, argument on sex offender registration is improper.

Appellant argues, as his trial defense counsel did at trial, that *Tyler* changed the analysis with regards to this issue. 81 M.J. at 108. In *Tyler*, the United States Court of Appeals for the Armed Forces held that "[i]n the absence of explicit statutory limitation, or other clear evidence of Congress's or the President's intent to limit comment on unsworn victim statements in presentencing argument, we hold either party may comment on properly admitted unsworn victim statements." *Id.* at 113 (footnote omitted). The court recognized that procedurally, the victim's right to make a statement was akin to an accused's right of allocution and presumed that Congress and the President intended unsworn victim statements to be treated similarly to an accused's unsworn statement. *Id.* at 112. Notably though, the court did not hold that counsel may comment on collateral consequences contained in the unsworn victim statements. Therefore, while *Tyler* provided guidance with regards to unsworn victim statements, it did nothing to change the law regarding the prohibition on counsel arguing collateral consequences.

As trial defense counsel's argument was improper when he referenced a collateral consequence, sex offender registration, the military judge did not err, let alone abuse his discretion, by sustaining the objection to such reference.

## D. Sentence Appropriateness

Appellant argues that his sentence, which included a dishonorable discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to the grade of E-1, is unduly severe.

### 1. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved based on the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record. *United States v. Fields*, 74 M.J. 619, 625 (A.F. Ct. Crim. App. 2015). While we have significant discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Id.*

### 2. Analysis

Appellant personally asserts that his sentence is unduly severe considering his alcoholism and the positive comments in his character letters. During presentencing, Appellant introduced an unsworn statement, seven character

letters, a summation of awards and decorations received, and an assortment of photographs, mostly of him with his family.

Appellant's crimes were particularly aggravating. On a military installation in a foreign country, he unlawfully entered the dorm room of another Airman in the early hours of the morning and proceeded to sexually penetrate her while she slept. For his crimes, he faced a mandatory dishonorable discharge and maximum confinement in excess of 30 years.

After carefully considering Appellant, the nature and seriousness of the offenses, the particularized extenuating and mitigating evidence, and all the other matters in the record of trial, we conclude Appellant's sentence is not inappropriately severe.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).[6] Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[6] We note that in his clemency request, Appellant requested that the convening authority waive automatic forfeitures. The convening authority purported to grant waiver of the automatic forfeitures commencing 14 days after the sentence was adjudged for six months, or until release from confinement or the expiration of Appellant's term of service, whichever was sooner. However, he did not grant any clemency with regards to the adjudged total forfeitures. Appellant does not raise any issues with regards to these actions or assert any prejudice. The record does not demonstrate any prejudice and we find none.